## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. YOHN ZAPADA (R17740), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 13 C 6987 ) |
| MICHAEL LEMKE, WARDEN, STATEVILLE CORRECTIONAL CENTER | ) ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Petitioner Yohn Zapada ("Zapada" or "Petitioner") is serving a 48-year sentence for first-degree murder. In this action, he seeks relief pursuant to 28 U.S.C. § 2254 on two bases. He claims that (1) the mandatory 20-year enhancement of his sentence for the use of a firearm violated his constitutional rights to due process and equal protection; and (2) his post-conviction counsel was ineffective in that she failed to timely file a notice of appeal from the trial court's dismissal of his post-conviction petition. Respondent Michael Lemke, the Warden of Stateville Correctional Center ("SCC") where Petitioner is incarcerated, has moved to dismiss Zapada's petition as untimely and meritless [8]. For the reasons explained below, Zapada's petition [1] is denied and the court declines to issue a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

### I. Background

On habeas review, federal courts presume as correct the factual findings made by the last state court to adjudicate the case on the merits. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). This presumption can only be rebutted by clear and convincing evidence. *Id.* The following facts are drawn from the Illinois Appellate Court's Order

affirming Zapada's conviction on direct appeal. *People v. Zapada*, 347 Ill. App. 3d 956, 808 N.E. 2d 1064 (1st Dist. 2004).

On the evening of June 17, 2001, Omar Brown sat in the driver's seat of a car parked in the alley beside his apartment in Cicero, Illinois. Also in the car, seated in back, were Brown's cousin, Conan Little, and Brown's friend, Raphael Vega. While the three were waiting for Little's father to join them in the car, Petitioner entered the alley on foot. As Petitioner walked past Brown's car, Brown allegedly cursed at Petitioner, and the two became entangled in a verbal dispute. The altercation quickly escalated and became physical: Petitioner banged on the hood of Brown's car and struggled with Brown near the car door. Moments later, two of Petitioner's friends, Danny (last name unidentified) and Alex Negron ("Negron"), entered the alley in a van and joined in the fight, which now included Little and Vega, as well. Although the circumstances of the ensuing melee are disputed, Petitioner acknowledged that he fired two gun shots at Brown before abandoning the gun and fleeing the scene. Zapada did not know whether his bullets found their intended target, but Little testified that Zapada's two shots struck Brown in the stomach and armpit. After Zapada fled, Negron grabbed the same gun and shot Brown two or three times.

Brown later died as the result of multiple gunshot wounds. Dr. Adrienne Segovia, a deputy medical examiner with the Cook County medical examiner's office, testified that, "in a multiple-gunshot-wound case, the Cook County medical examiner's office does not separate the shots to determine which was fatal, but assigns the wounds equal weight." *Id.* at 960, 808 N.E.2d at 1069. Therefore, both Zapada and Negron were considered to have fatally wounded Brown.

Following a bench trial before Judge Colleen McSweeny-Moore of the Circuit Court of Cook County, Petitioner was convicted of first-degree murder. *Id.* at 961, 808 N.E.2d at 1069. Petitioner maintained that the shooting was in self-defense, but the trial court determined that defendant was the aggressor, defeating any self-defense claim. *Id.* at 963, 808 N.E.2d at 1071.

At sentencing, the trial judge expressed concern about gang violence, stating, "the fact that gang members wield guns and shoot them willy-nilly for no apparent purpose is just so senseless." *Id.* at 965, 808 N.E.2d 1072. The trial court sentenced Petitioner to 30 years for the murder, with an additional 20 years for the discharge of a firearm during the commission of the offense, pursuant to 730 ILCS 5/5-8-1(a)(1)(d)(ii). *Id.* at 967, 808 N.E.2d at 1074 (quoting statute).

## II. Direct Appeal

Petitioner filed a timely appeal, raising three arguments: (1) that the trial court erred in considering the matter of gang violence in imposing sentence; (2) that the state did not sufficiently disprove self-defense; and (3) that the 20-year mandatory firearm enhancement in his sentence was unconstitutional. *Id.* at 965-67, 808 N.E.2d at 1072-73. The appellate court rejected both of Zapada's arguments regarding errors at trial, affirming his conviction. Zapada prevailed, however, on the sentencing-phase issue, and the case was remanded for re-sentencing. *Id.* at 966, 808 N.E.2d at 1073. While awaiting re-sentencing, Petitioner filed a petition for leave to appeal ("PLA") the trial issues to the Illinois Supreme Court, which was denied on December 1, 2005. (Order Denying PLA, *People v. Zapada*, No. 98474 (Ill. Dec. 1, 2005), Ex. B. to Resp't's Mot. to Dismiss [8], hereinafter "Mot. to Dismiss.")

On August 15, 2006, Petitioner and Negron were re-sentenced to twenty-eighty years each, plus the consecutive twenty-year firearm enhancement. (Mot. to Withdraw as Counsel on Appeal, *People v. Zapada*, No. 1-06-2493, Ex. C to Mot. to Dismiss, at 1.) Due to a typographical error in the trial-court transcript, it appeared that Negron had been given a lesser sentence (a total of 40 years, rather than 48), and Petitioner again appealed. (*Id.* at 1.) When it became clear that both Petitioner and Negron had, in fact, received the same sentence, the state appellate defender moved to withdraw Petitioner's opening brief and, pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw as counsel. (*Id.* at 1-2.) Petitioner did not object to the motion, and the Appellate Court granted it on October 23, 2008. (Summ. Order, *People*

3

*v. Zapada*, No. 1-06-2493 (1st Dist. 2008), hereinafter "Ill. App. Summ. Order," Ex. D to Mot. to Dismiss, at 2.)

### III. Post-Conviction Proceedings

Petitioner initially filed a state post-conviction petition on March 1, 2006, prior to his re-sentencing. (Docket Sheet, *People v. Zapada,* No. 01 CR 16022-2 (Cir. Ct. Cook Cnty.), Ex. I to Mot. to Dismiss, at 7.) This petition was dismissed by the Circuit Court of Cook County, without prejudice, on May 9, 2006. (*Id.*)

Petitioner filed another state post-conviction petition on January 5, 2007, this time *pro se*. (*Id.* at 9.) This petition was later amended by counsel. (*See* First Amendment to Previously Filed Post Conviction Petition, Ex. D. to Habeas Pet. [1].) In this petition, Zapada raised a claim of ineffective assistance of trial counsel based on, among other things, the allegedly inadequate impeachment of a key prosecution witness. (*Id.* at 5-7.) The State moved to dismiss the petition, and although the record does not contain a copy of the order, the docket reflects that the motion was granted on December 7, 2011. (Docket Sheet at 16.) Petitioner missed the 30-day deadline for filing an appeal, though his post-conviction counsel did file a notice of appeal on January 12, 2012, five days late. (*Id.*) The appellate court promptly dismissed that appeal on January 20, 2012. (*Id.*)

Petitioner subsequently filed, *pro se*, a motion for leave to file a late notice of appeal on April 6, 2012, with an affidavit explaining that his post-conviction counsel had falsely assured him that she had filed a timely appeal at his request. (Mot. for Late Notice of Appeal, *People v. Zapada*, No. 1-12-1134, hereinafter "Mot. for Late NOA," Ex. E to Mot. to Dismiss.) The appellate court denied this motion, too, on May 8, 2012 (Appellate Court Order, *People v. Zapada*, No. 12-1124, Ex. F to Mot. to Dismiss), and Petitioner's subsequent *pro se* PLA was denied by the Illinois Supreme Court on September 26, 2012. (Order Denying PLA, *People v. Zapada*, No. 114453 (Ill. Sept. 26, 2012), Ex. H to Mot. to Dismiss.)

## IV. Habeas Petition

One year and one day later, on September 27, 2013, Petitioner filed, *pro se*, this habeas petition pursuant to 28 U.S.C § 2254. (Habeas Pet.) As noted, he challenges the imposition of a 20-year fire arm enhancement on constitutional grounds, and argues that post-conviction counsel was ineffective.[1] (*Id.* at 6.)

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs the standards for federal habeas relief from a state-court conviction and sentence. 28 U.S.C. § 2254. Under AEDPA, a petitioner held in custody arising from a state-court conviction may be granted a writ of habeas corpus only when he is being held in violation of the Constitution or of federal laws or treaties. 28 U.S.C. § 2254(a). That is, "federal habeas relief does not lie for errors of state law." *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (internal quotations omitted).

AEDPA also imposes a one-year statute of limitations on petitioners seeking federal habeas relief. 28 U.S.C. § 2254(d)(1). The one-year deadline runs from the latest of four possible dates: (1) the date the conviction became final on direct review; (2) the date a state impediment to filing is removed; (3) the date on which a constitutional right is recognized and retroactively applied; or (4) the date on which the facts of petitioner's claim could be discovered with due diligence. 28 U.S.C. § 2254(d)(1). The limitations period is tolled, however, during the time that a properly filed state post-conviction petition is pending in state court. 28 U.S.C.

---

[1] Zapada's petition also raises several additional issues regarding his trial that are not identified as independent grounds for relief (e.g., that his actions in shooting Brown were justified by self-defense, that he had the ineffective assistance of trial counsel, and that the State's Attorney engaged in misconduct during the trial). (Pet'r's Resp. at ¶ 12.) To the extent those arguments are intended as separate claims, they are subject to the same timeliness analysis discussed below with regards to Petitioner's sentencing claim. Nor can these additional arguments be construed as a claim of actual innocence to excuse the untimeliness; Petitioner presented the same self-defense argument at trial. *See Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) ("The petitioner must support the innocence claim with new reliable evidence . . . that was not presented at trial.") (internal quotations omitted).

§ 2244(d)(2). Whether a post-conviction petition is deemed "properly filed," for purposes of tolling the statute of limitations, depends on its treatment by the state court. *Pace v. DiGuglielmo*, 544 U.S. 408, 412 (2005); *see also Owens v. Boyd,* 235 F.3d 356, 357 (7th Cir. 2000). That is, if a state court determines a petition is untimely, and therefore not "properly filed," none of the time before or during the court's consideration is tolled. *Id.*

The Seventh Circuit has not directly decided whether § 2244(d)(1)(A) establishes a single statute of limitations that applies to a petition as a whole, or whether each claim must be evaluated for timeliness on a claim-by-claim basis. The Court of Appeals has recognized, however, that "each of [its] sister circuits to consider the issue has determined that, in the habeas context, a petition's timeliness should be evaluated on a claim-by-claim basis." *Taylor v. Michael*, 724 F.3d 806, 810 n.3 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 926 (2014). Here, where Petitioner's claims stem from two different stages of his state-court proceedings, the court will examine the timeliness of each claim separately.

## II. Claim A: Challenge to Mandatory Firearm Enhancement

Petitioner first argues that the statute under which he was sentenced is unconstitutional. That statute provides, in relevant part, that "if, during the commission of the offense, the person personally discharged a firearm, 20 years shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-1(a)(1)(d)(ii). Petitioner claims that this provision violates his due process and equal protection rights under the Constitution. The court concludes this claim is untimely.[2]

---

[2] The court need not reach the merits of Petitioner's Claim A but notes that it appears to be meritless. As a general rule, a federal court will not review state sentencing determinations that fall within statutory limits, *United States ex rel. Anderson v. Hardy*, 779 F. Supp. 2d 816, 826 (N.D. Ill. 2011) (citing *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984), and Petitioner's sentence of forty-eight years is within the statutory limit of 20-60 years for a conviction of first-degree murder. 730 ILCS 5/5-4.5-20.

6

A.   **Statute of Limitations**

Petitioner's conviction became final on November 27, 2008, thirty-five days after the state appellate court affirmed his judgment of conviction, when his deadline for appealing to the Illinois Supreme Court passed. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653 (2012) (for petitioners who do not pursue their claims with the Supreme Court, AEDPA's limitations period begins running when the petitioner's time to appeal to the state's highest court expires). The AEDPA clock did not begin to run then, however, as Petitioner had already filed a post-conviction petition prior to the conclusion of direct review. (Docket Sheet at 9). The statute of limitations remained tolled until at least December 7, 2011, when the post-conviction trial court granted the state's motion to dismiss Zapada's petition. (Docket Sheet at 16.) Petitioner had 30 days to file an appeal with the Illinois Appellate Court, *see* Ill. Sup. Ct. R. 606(b), but failed to do so before the January 7, 2012 deadline. The Seventh Circuit has not reached the issue of whether the time during which a petitioner *could* have filed an appeal to the state appellate court, but did not, should also toll the statute of limitations. *See Johnson v. McCaughtry* 265 F. 3d 559, 565 (7th Cir. 2001). The court will assume, for purposes of this decision, however, that the 30 days Zapada had to appeal to the state supreme court are tolled. Zapada's attorney eventually filed an appeal five days later, on January 12, 2012. (Docket Sheet at 16.) This appeal was denied as untimely on January 20, 2012 (Pet'r's Resp. to Mot. to Dismiss, Dec. 30, 2013, hereinafter "Pet'r's Resp." at ¶ 6); therefore, the post-conviction appeal was not "properly filed," and did not toll the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. at 412.

On March 28, 2012, Petitioner filed a *pro se* Motion for Late Notice of Appeal.[3] (Mot. for Late NOA.) By that date, the statute of limitations had been running for a total of 80 days (between January 7, 2011 and March 28, 2012). This petition was denied on May 8, 2012.

---

[3] The Motion for Late Notice of Appeal has a file stamp date of April 6, 2008. Petitioner maintains that he filed the Motion on March 28, 2012, and Respondent has assumed the filing occurred on that earlier date. (Mot. to Dismiss at 9 n.6.)

(Appellate Court Order, Ex. F to Mot. to Dismiss.) Petitioner then filed a timely PLA with the Illinois Supreme Court on June 12, 2012. *Id.* That petition, too, was denied, on September 26, 2012. (Order Denying PLA, Ex. H to Mot. to Dismiss.) Both the motion and PLA were denied without comment, so it is unclear whether the state court deemed them "properly filed." For purposes of this petition, however, Respondent has conceded the issue, and this court, too, presumes that the motion and PLA were "properly filed" and that the time period for filing the habeas petition was tolled during those proceedings. (Mot. to Dismiss at 9.) After the state supreme court denied Zapada's PLA, the fact that Petitioner could possibly have filed a writ of certiorari does not toll the statute. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) (citing *Lawrence v. Florida*, 549 U.S. 327 (2007)). The one-year clock restarted after the denial of Zapada's PLA on September 26, 2012, at which point 80 days had already passed (discussed above). Thus, Petitioner had until July 8, 2013 (285 days later) to file his petition in this court.

A prisoner's *pro se* habeas petition is considered filed at the moment he delivers it to a prison official for mailing to the court. *Ray v. Clements*, 700 F.3d 993, 1002 (7th Cir. 2012) (citing *Houston v. Lack*, 487 U.S. 266, 275-276 (1988)). The record here contains conflicting information as to whether Zapada's petition was mailed on September 5 or September 25, 2013. (*See* Docket Sheet Entry #1, *Zapada v. Lemke*, No. 13 C 6987 (N.D. Ill.) (envelope containing petition postmarked September 25, 2013); *but see* Offender Authorization for Payment of 9/5/2013, Ex. A to Pet'r's Resp.). This dispute is of no consequence, however; even if Zapada filed his petition on September 5, he did so nearly two months outside the one-year limitations period set forth in § 2244(d)(1)(A).

### B. Equitable Tolling

Although Zapada filed his petition outside the limitations period, the court may still consider the merits of his petition if it deems it timely under the doctrine of equitable tolling. Such tolling is rare, however; the Seventh Circuit has "yet to identify a factual circumstance so extraordinary that it warrants equitable tolling." *Broyles v. Roeckeman*, No. 12 C 7702, 2013

WL 1729428, *3 (N.D. Ill. Apr. 22, 2013) (quoting *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)). This Circuit has even declined to apply tolling where a petition was filed one day late and petitioner's attorney's father died days before the deadline. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000); *see also Modrowski v. Mote*, 322 F.3d 965 (7th Cir. 2003) (declining to apply equitable tolling where petition was filed one day late due to petitioner's attorney's mental and physical incapacity).

District courts in this circuit have recognized equitable tolling in a handful of cases, but only where, despite due diligence, petitioners were unable to obtain vital information bearing on their claims because of exceptional circumstances outside their control. *See, e.g., United States ex rel. Vidaurri v. Hardy,* No. 08 C 3655, 2012 WL 1068735 (N.D. Ill. March 29, 2012) (tolling habeas limitations period where prison law clerk miscalculated petitioner's deadline and petitioner could not access the law library for a year); *Golden v. Oliver*, 264 F. Supp. 2d 701 (N.D. Ill. 2003) (equitably tolling the one-year limitations period of AEDPA where state appellate court did not notify inmate of the dismissal of his post-conviction petition for 17 months, despite inmate's repeated inquiries to the court); *United States ex rel. Wesley v. Chrans*, No. 00 C 4826, 2001 WL 1155260 (N.D. Ill. Sept. 28, 2001) (applying equitable tolling where, despite numerous inquiries by petitioner, the post-conviction trial court took 11 months to inform petitioner that his petition had been dismissed).

This exacting standard for determining whether a petitioner is entitled to equitable tolling has two elements. Equitable tolling is appropriate only if a petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). The petitioner need not demonstrate that he exercised "maximum feasible diligence" in pursuing his rights, but he must at least show that he acted with "reasonable diligence." *Id.* at 653 (internal quotations omitted). Serious attorney misconduct may constitute an extraordinary circumstance warranting tolling, *Obriecht v. Foster*, 727 F.3d 744, 749 (7th Cir.

9

2013), but the Court has made clear that "garden variety" attorney negligence (e.g., "a simple 'miscalculation' that leads a lawyer to miss a filing deadline" or being "unaware of the date on which the limitations period expired") is insufficient.to justify equitable tolling, *Holland*, 560 U.S.at 651-52.

Neither of the elements necessary for tolling is established here. First, Petitioner has not pursued his rights diligently. In *Pace*, the Court concluded that a petitioner who "sat on his rights" for the entire duration of lengthy proceedings in state court, and delayed for five months more after his direct review was completed, did not pursue his rights diligently. *Pace*, 544 U.S. at 419. Zapada, similarly, went through a lengthy appeals process and two rounds of post-conviction proceedings, without exercising his habeas rights. He then waited an additional year after the denial of his PLA before filing this petition. Petitioner did not diligently pursue his rights for the purposes of equitable tolling.

Nor has Petitioner identified any extraordinary circumstances that would justify tolling. Attorney conduct, including conduct "labeled negligent; grossly negligent; or willful," is not extraordinary or beyond a petitioner's control. *Modrowski*, 322 F.3d at 968. Petitioner points to the fact that his post-conviction counsel filed his appeal late after leading him to believe she would file it on time as evidence of "extraordinary circumstances." (Habeas Pet. at 27.) In circumstances very similar to these, however, the Seventh Circuit declined to allow a late filing, and observed that, even before *Pace*, this circuit "had rejected applying equitable tolling to circumstances where counsel directly misled a client that he filed a timely petition." *Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (citing *Modrowski*, 322 F. 3d at 968). Courts place the responsibility on clients to oversee their attorneys, even in cases where the clients may have been misled. *See Modrowski*, 322 F.3d at 968 ("attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client"). Therefore, the facts that Petitioner alleges do not warrant equitable tolling.

### III. Claim B: Ineffective Assistance of Post-Conviction Counsel

Petitioner's second claim requires no lengthy discussion. He contends that post-conviction counsel was ineffective because she failed to timely file a notice of appeal from the trial court's dismissal of his post-conviction petition, despite his explicit request. Petitioner also alleges that counsel led him to believe she had filed the petition when she had not done so. Because this claim arose long after the sentencing challenge discussed above, it appears to be timely. Under AEDPA, the statute of limitations for any new claims begins to run on date on which the facts of the new or additional claim could be discovered with due diligence. 28 U.S.C. § 2254(d)(1). Here, Petitioner could not have known about his attorney's failure to file the petition in a timely manner until January 2013, when that petition was actually due, less than one year before Zapada filed this petition.

Although it was timely filed, this claim lacks merit. While, as Petitioner points out, Illinois does guarantee the right to counsel in state post-conviction proceedings (Habeas Pet. at 48), AEDPA explicitly states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief . . . under section 2254." 28 U.S.C. § 2254(i). The right to post-conviction counsel under state law has no bearing on a federal habeas court, which may only redress noncompliance with federal law. *Wilson*, 131 S. Ct. at 16.

### IV. Certificate of Appealability

The court declines to issue a certificate of appealability. Such a certificate may issue only if the prisoner has at least one substantial constitutional question for appeal. 28 U.S.C. § 2253(c)(2). In a case such as this, where the court denies relief on procedural grounds, the petitioner seeking the certificate must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Slack* v. *McDaniel*, 529 U.S. 473, 484 (2000). The only question for appeal on Claim A would be whether Zapada's habeas petition was untimely; and the court's ruling on this procedural issue is not one that reasonable jurists would find debatable. Furthermore, Zapada's Claim B rests on state rather than federal law. Neither of these issues present any substantial constitutional question.

## **CONCLUSION**

For the foregoing reasons, Petitioner's habeas corpus petition [1] is denied. Respondent's motion to dismiss [8] is stricken as moot, and the court declines to issue a certificate of appealability.

ENTER:

Dated: April 23, 2014

REBECCA R. PALLMEYER
United States District Judge